IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DALZIEL DALZEAL LLC, d/b/a
Dalziel Law Firm, and CHARLES
M. DALZIEL, JR.,

      Plaintiffs,

v.

DICKINSON WRIGHT PLLC,

      Defendant.

CIVIL ACTION FILE

NO. 1:21-CV-0377-MHC

## ORDER

This case is before the Court on Defendant Dickinson Wright PLLC's

Motion to Dismiss ("Def.'s Mot.") [Doc. 15].

## I.    BACKGROUND[1]

According to the Complaint, a lawsuit was filed in the State Court of

DeKalb County in 2014 styled The Impact Partnership, LLC, Tree Fine, and Jovan

Will v. Joshua David Mellberg, LLC, d/b/a J.D. Mellberg Financial, Joshua David

---

[1] Because this case is before the Court on a motion to dismiss, the facts are
presented as alleged in Plaintiffs' Complaint [Doc. 1].  See Silberman v. Miami
Dade Transit, 927 F.3d 1123, 1128 (11th Cir. 2019) (citation omitted).

Mellberg, and Chris Stanton, State Ct. of DeKalb Cnty., No. 51191-5 (the "DeKalb

Action"). Compl. [Doc. 1] ¶¶ 1, 7. Defendant Dickinson Wright PLLC

("Dickinson Wright") represented Joshua David Mellberg, LLC, d/b/a J.D.

Mellberg Financial, and Joshua David Mellberg ("Mellberg" or the "Mellberg

Defendants") in the DeKalb Action.[2] Id. ¶ 8. On or about March 18, 2014, the

Mellberg Defendants and Dickinson Wright asked Plaintiff Charles M. Dalziel, Jr.

("Dalziel") "to provide legal services" to Chris Stanton in the DeKalb Action and

"represented to Dalziel that they would pay Dalziel for defending Stanton" in the

DeKalb Action. Id. ¶ 11.

At the time Dickinson Wright purportedly "engaged" Dalziel to represent

Stanton, Dalziel was a member of the law firm Gregory, Doyle, Calhoun and

Rogers, LLC ("GDCR"). Id. ¶¶ 12, 17-18. Dalziel later received instructions with

respect to his representation of Stanton from both the Mellberg Defendants and

Dickinson Wright and was told to "set up the file to bill his time at $355/hour" by

the Mellberg Defendants. Id. ¶¶ 18-20. By October 4, 2014, Dalziel sent invoices

---

[2] The Mellberg Defendants also were Defendants in the present action but were
dismissed as parties following a resolution of the claims brought against them by
Plaintiffs. Sept. 22, 2021, Order [Doc. 39]. Wherever Plaintiffs ascribe an action
to "Defendants" in the Complaint, the Court will treat such allegations as against
the remaining Defendant, Dickinson Wright.

to one of the Mellberg Defendants for fees totaling $28,812.78 and, when the invoices were not paid, also sent them to Dickinson Wright.  Id. ¶¶ 21-22.  On June 25, 2015, after invoices were still unpaid, Dalziel sent emails to both Mellberg and Dickinson Wright about the invoices, and later "confirmed that JD Mellberg had undertaken financial responsibility for the invoices."  Id. ¶ 23 (citing Oct. 21, 2014, email from Josh Mellberg to Chuck Dalziel [Doc. 1 at 48] (Ex. B to Compl.)) ("[T]he arrangement as I understand it is that JD Mellberg has and is taking responsibility for Mr. Stanton's representation.").

On June 29, 2015, David Bray ("Bray"), an attorney with Dickinson Wright, emailed Dalziel that "We've been battling with State Farm to get both of our invoices and your invoices paid through the coverage they have accepted.  So far we have made progress with Dickinson Wright invoices, but not with yours.  I hope to turn that around i[n] short order.  In the meantime, I have suggested to Josh [Mellberg] make (sic) at least partial payment to you this week."  Id. ¶ 24 (citing June 29, 2015, email from David G. Bray to Chuck Dalziel [Doc. 1 at 51] (Ex. C to Compl.)).  Dalziel requested Dickinson Wright to update him on the status of payments from Mellberg in July 2015, but received none.  Id. ¶ 26.  On August 31, 2015, Chuck Murphy ("Murphy") of the law firm Vaughn & Murphy, Mellberg's local counsel, emailed Bray to ask if Bray could intervene with Josh Mellberg in

order to facilitate payment for Dalziel's defense of Stanton. Id. ¶ 31 (citing Aug,
31, 2015, email from Chuck Murphy to David G. Bray [Doc. 1 at 55] (Ex. D to
Compl.)).

The failure to have these invoices paid resulted in negative actions taken by
members of GDCR against Dalziel, causing Dalziel emotional damage and an
absence from work. Id. ¶¶ 27-38. After Dalziel returned to work, he learned that
the invoices still had not been paid and, in July 2016, raised the unpaid invoice
issue with Murphy, who again reached out to Bray to have another discussion with
Josh Mellberg. Id. ¶ 42 (citing Aug, 2, 2016, email from Chuck Murphy to David
G. Bray [Doc. 1 at 62] (Ex. E to Compl.)). Dalziel contends that each time Bray
was contacted to reach out to Josh Mellberg, he "voluntarily undertook a duty to
Dalziel to procure the promised payment of the invoices[.]" Id. ¶¶ 24, 43, 49, 53.
Throughout August 2016, Dalziel sent emails to Bray seeking an update as to the
status of payments. Id. ¶ 45; [Doc. 1 at 64-66] (Ex. F to Compl.). On September
21, 2016, Dalziel called Dickinson Wright to offer to accept $25,000 to settle the
outstanding fee obligation, and Bray indicated by email that he "informed in house
counsel" for JD Mellberg of the offer, but the offer was not accepted. Id. ¶ 48
(citing Sept. 22, 2016 email from David Bray to Chuck Dalziel [Doc. 1 at 72] (Ex.
G to Compl.)).

4

On July 25, 2017, Dalziel emailed Bray and Murphy with respect to the outstanding invoices stating, in part, as follows:

> We have sent invoices to Joshua David Mellberg, LLC for the very substantial work we have done at your request for Process server Chris Stanton, and were assured several times by phone and email early on that Josh David Mellberg, LLC would certainly pay us. Nothing has been paid over two years and the total amount charged was $48,161.05 for the 27 months the invoices cover. . . . Please arrange to wire us this unpaid balance immediately.

Id. ¶ 51 (citing July 25, 2017, email from Chuck Dalziel to David G. Bray and Chuck Murphy [Doc. 1 at 85] (Ex. I to Compl.)). Bray responded by saying, "I will try talking to Josh [Mellberg] again about your fees." Aug. 1, 2017, email from David G. Bray to Chuck Dalziel [Doc. 1 at 87] (Ex. I to Compl.). On February 24, 2018, Dalziel sent an email to Bray and Murphy, stating, in part,

> While you're at it, you need to pay me, and I ain't kidding. . . . At this point I am ready to file a third party complaint against Mellberg and may include Dickinson Wright and several other individuals who have defrauded me into doing this work . . . I deserve to be paid. And, if I'm not, as Jimi Hendrix says in Foxy Lady, I'm coming to getcha.

Compl. ¶ 57 (citing Feb. 24, 2018, email from Chuck Dalziel to David G. Bray and Chuck Murphy [Doc. 1 at 90] (Ex. J to Compl.)).

Over one year later, Dalziel sent the following email to Mellberg, copying Bray and Murphy:

> I met with David Bray in Phoenix on February 19 in an effort to get the fees J.D. Mellberg promised to pay me for defending Chris Stanton

5

actually paid.  David acted as if he has absolutely no power over the issue although Dickinson Wright and Chuck Murphy engaged me to do provide this defense expressly representing they were authorized to do so by Mellberg and the Mellberg entities—me not knowing that impact would assert a $14 million claim against the defendants.  Fellas, I'm just telling you, I will be paid one day.  Your conduct violates the Georgia Fair Business Practices Act as it was unfair and deceptive, giving me a claim for treble damages against all who misled me, plus attorneys fees even if I am only awarded a dollar, plus exemplary damages.  Compared to what must be the millions Dickinson Wright has charged J.D. Mellberg, my $150,000 in fees is a pittance.

***

**Please confirm that I will be paid within 10 days and that my work in the future will be paid at the $355 hourly rate.  Failing your doing so, I will consider all available court, administrative, professional association and bar association remedies that are available to me as applies to each of you.**

Id. ¶ 64 (citing Mar. 6, 2019, email from Chuck Dalziel to

dmorgan@mellberg.com [Doc. 1 at 91-92] (Ex. K to Compl.)).  Having received

no response, Dalziel followed up with an email on August 5, 2019.  Id. ¶ 62 (citing

Aug. 5, 2019, email from Chuck Dalziel to dmorgan@mellberg.com [Doc. 1 at 93]

(Ex. L to Compl.)).  On January 3, 2020, Dalziel again sent an email to the same

recipients, stating:

> Since I have started my own firm another $47,000 in fees have been incurred . . . All of you owe me $197,000 and if that sum is not paid to Dalziel Law Firm within 30 days interest will begin running at 1.5% per month, 18% per year, and all of you are personally liable.  So you better pay me, just saying, again my fees over five now six years are a pittance.  Otherwise, Stanton will move to add this claims to the main lawsuit, or failing that, will file another suit against you deadbeats.

6

Id. ¶ 64 (citing Jan. 3, 2020, email from Chuck Dalziel to dmorgan@mellberg,com

[Doc. 1 at 95] (Ex. M to Compl.)).

> Dalziel's Complaint asserts that Dickinson Wright damaged him by

> negligently failing to discharge the voluntary obligation [it] undertook
> to Dalziel five different times to obtain for Dalziel payment by the
> Mellberg Defendants of Dalziel's invoices for the work Dalziel did
> defending Stanton in the DeKalb Action, after Dalziel tendered his
> statement first to the Mellberg Defendant, and then to all Defendants.

Id. ¶ 68. Dalziel's Complaint alleges the following causes of action against

Dickinson Wright: account stated (Count One), account (Count Two), negligent

failure to perform a duty voluntarily undertaken (Count Four); promissory estoppel

(Count Five), equitable fraud (Count Six), expenses of litigation (Count Seven),

and punitive damages (Count Eight). Id. ¶¶ 74-75, 82-103.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a

"short and plain statement of the claim showing that the pleader is entitled to

relief." Under Federal Rule of Civil Procedure 12(b)(6), a claim will be dismissed

for failure to state a claim upon which relief can be granted if it does not plead

"enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 570 (2007). The Supreme Court has explained this

standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation omitted). Thus, a claim will survive a motion to dismiss only if the factual allegations in the pleading are "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

At the motion to dismiss stage, the court accepts all well-pleaded facts in the plaintiff's complaint as true, as well as all reasonable inferences drawn from those facts. McGinley v. Houston, 361 F.3d 1328, 1330 (11th Cir. 2004); Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). Not only must the court accept the well-pleaded allegations as true, but these allegations must also be construed in the light most favorable to the pleader. Powell v. Thomas, 643 F.3d 1300, 1302 (11th Cir. 2011). However, the court need not accept legal conclusions, nor must it accept as true legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678. Thus, evaluation of a motion to dismiss requires the court to assume the veracity of well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

## III.   DISCUSSION

### A.   Claims for Account Stated and Account (Counts One and Two)

Dickinson Wright asserts that Dalziel cannot maintain actions for account stated or account because the Complaint fails to allege an agreement whereby Dickinson Wright agreed to pay for legal services provide by Dalziel to Stanton in the DeKalb Action and, if any such agreement was properly pleaded, it would be barred by the Statute of Frauds.  Mem. of Law in Supp. of Def.'s Mot. to Dismiss ("Def.'s Br.") [Doc. 15-1] at 5-11.  Dalziel contends that the Complaint in fact sufficiently alleges that Dickinson Wright owes him for legal services he rendered to Stanton.  Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Resp.") [Doc. 29] at 4-12.  Dalziel also contends that his cause of action did not accrue until he made his demand on November 6, 2020, so that the statute of limitations does not bar his claims.  Id. at 12-14.

"An account stated is an agreement, between persons who have had previous transactions, fixing the amount due in respect of such transactions, and promising payment."  Sinclair Refining Co. v. Scott, 60 Ga. App. 76, 76 (1939) (citations omitted).  "Account stated differs from the action of account in that the account sued on is balanced and the amount agreed on before action brought."  Floyd v. Morgan, 60 Ga. App. 496, 496 (1939).  "An open account is defined as an account

which has not been finally settled or closed, but is still running or open to future amendment or adjustment . . . ." Altacare Corp. v. Decker, Hallman, Barber & Briggs, P.C., 316 Ga. App. 718, 719 (2012). "However, when there is a dispute that goes to either assent to the services, terms of the contract, what work was performed, the quality of the performance, or costs, then suit on account is not the proper procedure for suit, because there is a factual issue other than nonpayment on the account." Id. (quoting Five Star Steel Constr., Inc. v. Klockner Namasco Corp., 240 Ga. App. 736, 738-39 (1999)). An essential prerequisite to a claims for either an open account or account stated "is the existence of a debt incurred by the defendant." Trusted Data Sols., LLC v. Kotchen & Low, LLP, No. 1:14-cv-1419-TCB, 2015 WL 11251959, at *5 (N.D. Ga. Feb. 6, 2015).

In this case, Dalziel has failed to sufficiently plead a debt owed to him by Dickinson Wright. Although Dalziel alleges that when Dickinson Wright asked him "to provide legal services" to Stanton in the DeKalb Action and "represented to Dalziel that they would pay Dalziel for defending Stanton," Compl. ¶ 11, the emails attached to the Complaint indicate otherwise.[3] The Complaint itself clearly

---

[3] A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. Wilchombe v. TeeVee Toons, Inc., 555 F,3d 949, 959 (11th Cir. 2009). The law is clear in this circuit that "when exhibits attached to a complaint 'contradict the general and conclusory allegations

indicates that Joshua David Mellberg, LLC undertook responsibility for payment

of Dalziel's invoices, Compl. ¶ 23, and the emails attached to the Complaint

confirm that (1) Josh Mellberg informed Dalziel that "JD Mellberg has and is

taking responsibility financially for Mr. Stanton's representation," and (2) when

Mellberg did not pay the invoices, both local counsel for Mellberg (Vaughn &

Murphy) and counsel for Mellberg in the DeKalb Action (Dickinson Wright)

communicated with Mellberg on Dalziel's behalf on numerous occasions in an

attempt to get Mellberg to pay the invoices.  Although Dalziel's Complaint alleges

that Dickinson Wright's voluntary efforts to reach out to Mellberg to procure

payment of the invoices resulted in the creation of some legal duty, Compl. ¶¶ 24,

43, 49, 53, that does not equate to the pleading of an agreement between Dalziel

and Dickinson Wright such that the latter would be responsible for Dalziel's

attorney's fees.  Without such an agreement, there can be no recovery based on

account stated or open account.  Based upon the allegation in the Complaint that

Mellberg accepted responsibility for the payment of Dalziel's invoices and the

documents attached to the Complaint that reveal there was no debt otherwise

---

of the pleading, the exhibits govern.'"  <u>Gill as Next Friend of K.C.R. v. Judd</u>, 941
F.3d 504, 514 (11th Cir. 2019) (quoting <u>Griffin Indus., Inc. v. Irvin</u>, 496 F.3d
1189, 1206 (11th Cir. 2007)).

incurred by Dickinson Wright in its efforts to urge Mellberg to pay those invoices, there was no debt incurred by Dickinson Wright that would support a claim for open account or account stated.  <u>Trusted Data Sols.</u>, 2015 WL 11251959, at *6.

Thus, Counts One and Two of the Complaint are **DISMISSED**.[4]

## B.      Negligent Failure to Perform a Duty Voluntarily Assumed (Count Four)

Dickinson Wright contends that Dalziel cannot maintain a claim for negligent performance of a voluntarily assumed duty where there is an obligation on another to pay for services and there is no written contract with respect to the payment of the debt.  Def.'s Mot. at 11-13.  Dalziel asserts that this claim is plausible "because the failure to exercise reasonable care in performing a duty voluntarily undertaken increases the risk of harm to the one who is owed the duty." Pl.'s Resp. at 16.

Georgia law recognizes that a person may be held liable for the negligent performance of a voluntary undertaking.

---

[4] Because Dalziel fails to state a claim for relief based upon open account or account stated, the Court need not consider Dickinson Wright's Statute of Frauds argument.  The Court notes that Dickinson Wright makes statute of limitations arguments as a defense for many of the claims in the Complaint; however, because the Court is dismissing those claims on the ground of plausibility, it need not consider the statute of limitations alternative arguments.

> Under this principle, one who undertakes to do an act or perform a
> service for another has the duty to exercise care, and is liable for injury
> resulting from his failure to do so, even though his undertaking is purely
> voluntary or even though it was completely gratuitous, and he was not
> under any obligation to do such act or perform such service, or there
> was no consideration for the promise or undertaking sufficient to
> support an action ex contractu based thereon.  When one undertakes an
> act that he has no duty to perform and  another person reasonably relies
> upon that undertaking, the act must generally be performed with
> ordinary or reasonable care.

Osowski v. Smith, 262 Ga. App. 538, 540 (2003) (citations omitted).  However,

the Georgia courts have acknowledged that this modification of the "Good

Samaritan" rule is not particularly suited for matters which involve contractual

obligations for payment of a debt.

> In Georgia we have recognized the principle that liability can arise from
> the negligent performance of a voluntary undertaking.  See e.g., Mixon
> v. Dobbs Houses, 149 Ga. App. 481 (1979); Housing Auth. of Atlanta
> v. Famble, 170 Ga. App. 509, 524(3) (1984).  This includes liability to
> third persons resulting from negligent inspections.  Huggins v. Aetna
> Cas., etc., Co., 245 Ga. 248 (1980); Johnson v. Landing, 157 Ga. App.
> 313, 315(1) (1981).   Thus, having taken the aegis of a "Good
> Samaritan," one is responsible for negligently performing the duties
> assumed.  This is not complex or difficult to apply.  However, problems
> multiply when the duties one offers to assume are primarily contractual
> in nature and involve such concepts as the parol evidence rule and the
> statute of frauds.  Can one be negligent in failing to see to it that another
> gets paid, without putting anything in writing and without specifying
> the amount, time of performance and a host of other formalities
> normally necessary to constitute a binding obligation to perform a
> promise?  Many cases, without mentioning the theory underlying the
> negligent performance of a voluntarily assumed duty, have said "no."

Cmty. Fed. Sav. & Loan Ass'n v. Foster Devs., Inc., 179 Ga. App. 861, 865-66

(1986) (citations and parallel references omitted).

In Community Federal, a real estate developer conveyed two lots of a

development to a builder, and the real estate broker orally represented that the

developer would be paid after the builder received construction financing. Id. at

862. The bank's loan officer thereafter was contacted by the developer to confirm

that the loan proceeds had been received by the builder, and then asked the loan

officer, "will you see that I get paid for my lots," to which the loan officer replied,

"okay." Id. at 863-64. The Georgia Court of Appeals held that there was no

liability based on a claim for negligent performance of a voluntary undertaking

with respect to the bank or its loan officer "since there was clearly no consideration

for their action. Instead, [the loan officer's] statement is construed to be no more

than an assurance of cooperation in helping [the developer] protect his interest."

Id. at 866.

Similarly, in this case, Mellberg was responsible for payment of Dalziel's

legal fees, and Dickinson Wright offered to contact Mellberg in an effort to

facilitate that payment. Dalziel fails to plausibly plead a cause of action against

Dickinson Wright for negligent performance of a voluntary undertaking where the

documents attached to the Complaint reveal that Dickinson Wright merely

14

indicated it would contact Mellberg and urge him to pay Dalziel the debt owed by Mellberg.

The cases relied upon by Dalziel are inapposite. <u>Scott Hudgens Realty & Mortg., Inc. v. Executive Action, Inc.</u>, 125 Ga. App. 81 (1971), stands for the proposition that the promise to pay the debt of another is not subject to the Statute of Frauds, but in this case there is no allegation in the Complaint that Dickinson Wright promised to pay the debt owed by Mellberg (and the documents attached to the Complaint show that no such promise was made). <u>Herrington v. Deloris Gaulden</u>, 294 Ga. 285 (2013), was a medical malpractice action in which the issue was whether a physician adequately supervised the training of other physicians and staff. In <u>Mixon v. Dobbs Houses, Inc.</u>, 149 Ga. App. 481 (1979), an employee whose wife was pregnant obtained an agreement from his shift manager to relay any phone calls from his wife about her impending delivery when the employee had no access to a telephone; the court held that once the promise was made to deliver the wife's message to her husband, it was undertaken with a duty to perform with reasonable case. In this case, notwithstanding Dalziel's assertion that Dickinson Wright "assumed" some duty to get Dalziel paid, the exhibits attached to the Complaint undermine that assertion—the only representation made by Dickinson Wright was that they would contact Mellberg in an effort to get

15

Mellberg to live up to Mellberg's obligation.  Finally, in <u>Housing Authority of
Atlanta v. Famble</u>, 170 Ga. App. 509 (1984), the issue was whether there was overt
or passive negligence by the Atlanta Housing Authority or a housing complex for
the condition of a storm sewer when two resident children drowned.

Because Dalziel fails to assert a plausible claim of negligent performance of
a voluntary undertaking based on Dickinson Wright's agreement to contact
Mellberg in an attempt to get Mellberg to pay legal fees owed by Mellberg to
Dalziel, Count Four is **DISMISSED**.

### C.    Promissory Estoppel (Count Five)

Dalziel contends that Dickinson Wright made a promise that Dalziel would
be paid by Dickinson Wright for the legal work performed in defending Stanton.
Compl. ¶ 85.  Dickinson Wright asserts that this claim fails as a matter of law
because there is a failure to allege any such promise was made and there is no
written instrument evincing such a promise.  Def.'s Mot. at 17-18.  Dalziel argues
that an oral promise can be enforced.  Def.'s Resp. at 18-20.

"[R]ecovery on a theory of promissory estoppel under Georgia law is
possible only if the defendant made a promise upon which the plaintiff reasonably
relied."  <u>Miller v. Chase Home Fin., LLC</u>, 677 F.3d 1113, 1117 (11th Cir. 2012)
(citing O.C.G.A. § 13-3-44(a)).  Under Georgia law, "[a] promise which the

16

promisor should reasonably expect to induce action or forbearance on the part of

the promisee or a third person and which does induce such action or forbearance is

binding if injustice can be avoided only by enforcement of the promise." O.C.G.A.

§ 13-3-44(a).  To prevail on a claim for promissory estoppel, Plaintiff must allege

facts showing four elements: (1) a promise made by Defendant, (2) a reasonable

expectation by Defendant that Plaintiff would rely on that promise, (3) a

detrimental reliance by Plaintiff, and (4) injustice can only be avoided by the

enforcement of the promise.  Houston v. Houston, 267 Ga. App. 450, 451 (2004);

Everts v. Century Supply Corp., 264 Ga. App. 218, 220 (2003).

"Promissory estoppel is an equitable doctrine designed to prevent the

intricacies and details of the law from frustrating the ends of justice." Sun-Pac.

Enters., Inc. v. Girardot, 251 Ga. App. 101, 106 (2001) (citation and quotation

omitted).  "[W]here a plaintiff seeks to enforce an underlying contract which is

reduced to writing, promissory estoppel is not available as a remedy." Adkins v.

Cagle Foods JV, LLC, 411 F.3d 1320, 1326 (11th Cir. 2005) (citing Bank of Dade

v. Reeves, 257 Ga. 51 (1987)).  Moreover, promissory estoppel does not apply to

promises that are vague, indefinite, or of uncertain duration.  Mariner Healthcare

Inc. v. Foster, 280 Ga. App. 406, 412 (2006).

Dalziel's cause of action for promissory estoppel fails based on his failure to allege at least two of the four elements: that Dickinson Wright made a promise to pay his legal fees for work rendered to Stanton, or that there was a reasonable expectation by Dickinson Wright that Dalziel would rely on a promise that never existed.  Dalziel tried to get around this flaw in the Complaint by alleging that Dickinson Wright "never denied" it was responsible for paying his legal fees. Def.'s Resp. at 21.  See Compl. ¶¶ 44 ("There was not even a hint of a suggestion from Dickinson Wright . . . that they were no obligated to pay Dalziel . . . ."); 70 (Dickinson Wright "did not contest" the amount owed in the statements Dalziel sent to the law firm).  The Complaint and the exhibits attached thereto reveal that Mellberg had the responsibility to pay Dalziel for the Stanton representation and that Dickinson Wright's only action taken was to make an effort to get Millberg to fulfill his obligation.  "A promise is a manifestation of an intention to act or refrain from acting in a specified way, so made as to justify a promise in understanding that a commitment has been made." DPLM, Ltd. v. J.H. Harvey Co., 241 Ga. App. 219, 221 (1999) (citations omitted).  A "promise" to pay someone's legal fees cannot be presumed from the failure to "suggest" that there is no such obligation; there must be some allegation that there was a manifestation of an intent to pay those legal fees.  There is no such allegation with respect to Dickinson Wright in

18

the Complaint; indeed, there are allegations that Mellberg engaged Dalziel to

provide legal services to Stanton in the DeKalb Action.  See Compl. ¶¶ 2, 23; Oct.

21, 2014, email from Josh Mellberg to Chuck Dalziel [Doc. 1 at 48].  And, if there

was no promise by Dickinson Wright to pay Dalziel's legal fees, there can be no

expectation by Dickinson Wright that Dalziel would rely on such a promise.

Consequently, Count Five is **DISMISSED**.

### D.    Equitable Fraud (Count Six)

Dickinson Wright argues that Dalziel has failed to adequately plead fraud.

Def.'s Mot. at 18-21.  Under Georgia law, a claim for fraud has five elements:

"(1) a false representation or omission of a material fact; (2) scienter; (3) intention

to induce the party claiming fraud to act or refrain from acting; (4) justifiable

reliance; and (5) damages."  Home Depot of U.S.A., Inc. v. Wabash Nat'l Corp.,

314 Ga. App. 360, 367 (2012) (internal quotation marks and citation omitted).  A

party alleging fraud must "state with particularity the circumstances constituting

fraud."  FED. R. CIV. P. 9(b) (emphasis added).  The Eleventh Circuit has

interpreted this Rule as follows:

> Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what
> statements were made in what documents or oral representations or
> what omissions were made, and (2) the time and place of each such
> statement and the person responsible for making (or, in the case of
> omissions, not making) same, and (3) the content of such statements

and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."

Tello v. Dean Witter Reynolds, Inc., 494 F.3d 956, 972 (11th Cir. 2007) (citations omitted).

Dalziel alleges constructive fraud based upon "Defendants pull[ing] Dalziel in to represent Stanton on a cooperative basis with Dickinson Wright and the Mellberg Defendants' local counsel (who has worked previously with Dalziel and suggested Dalziel as the lawyer for Stanton to Defendants)." Compl. ¶ 89. Dalziel also alleges that Dickinson Wright failed to disclose that they would not pay him his legal fees, which was a misrepresentation of a material fact he relied upon. Id. ¶¶ 95-96. The major distinction between actual fraud and constructive fraud is that the latter does not require an intent to deceive. Lawyers Title Ins. Corp. v. New Freedom Mortg. Corp., 285 Ga. App. 22, 25 (2007).

"Fraud cannot consist of mere broken promises, unfilled predictions or erroneous conjecture as to future events." Riddle v. Driebe, 153 Ga. App. 276, 281 (1980) (citations omitted). Moreover, "[r]epresentations concerning expectations and hopes are not actionable." Smith v. McClung, 215 Ga. App. 786, 788 (1994) (citation omitted). At most, the Complaint in this case alleges that Dickinson Wright informed Dalziel that it would do all it could to convince Mellberg to pay the legal fees Mellberg owed to Dalziel, and that constructive fraud was committed

because Dickinson Wright failed to make that happen.  Dickinson Wright's

representation to Dalziel was, at best, an expectation which is not actionable in

fraud.  Dalziel fails to allege that Dickinson Wright itself made any representation

that it would pay the legal fees incurred through the Stanton representation.  The

mere fact that Dickinson Wright may have participated (with Mellberg's local

counsel) in recommending Dalziel to undertake the Stanton representation does not

equate to a false representation that Dickinson Wright would be responsible for the

legal fees incurred by Dalziel if Mellberg refused to pay those fees.

Therefore, Count Six of the Complaint is **DISMISSED**.

### E.    Expenses of Litigation and Punitive Damages (Counts Seven and Eight)

Without any substantive claims against Dickinson Wright remaining after

the grant of its motion to dismiss Counts One, Two, Four, Five, and Six, Dalziel's

derivative claims for expenses of litigation and punitive damages fail as a matter of

law.  See Stephen A. Wheat Tr. v. Sparks, 325 Ga. App. 673, 682 (2014) ("An

award of attorney fees, costs, or punitive damages is derivative of a plaintiff's

substantive claims.").

## IV.   CONCLUSION

For all the above reasons, it is hereby **ORDERED** that Defendant Dickinson

Wright PLLC's Motion to Dismiss [Doc. 15] is **GRANTED**.  Plaintiffs' Complaint

against Dickinson Wright PLLC is **DISMISSED WITH PREJUDICE**.

The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED** this ⟍⟋ day of January, 2022.


_____
MARK H. COHEN
United States District Judge